IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

TONY FAIRCLOTH,                          :
                                         :
     Plaintiff,                      :
                                         :
     v.                              :
                                         :    No. 5:10-CV-352 (CAR)
HERKEL INVESTMENTS, INC. D/B/A :
AARON'S SALES & LEASE,                   :
                                         :
     Defendant.                      :
_____ :

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR LEAVE TO OBTAIN ADDITIONAL DISCOVERY

Before the Court are Defendant Herkel Investments, Inc.'s ("Herkel") Motion for Summary Judgment [Doc. 19], Plaintiff Tony Faircloth's Motion for Leave to Obtain Additional Discovery [Doc. 33], and Notices of Objection filed by both parties [Docs. 28, 31]. In its Motion, Defendant requests summary judgment on Plaintiff's allegations of sexual harassment, sex discrimination, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq ("Title VII"). In his Motion for Leave to Obtain Additional Discovery, Plaintiff requests additional time to subpoena and depose an individual about an alleged genuine issue

1

of material fact.   After a thorough consideration of the facts and relevant law, the Court concludes that that there is no genuine issue of material fact with regard to Plaintiff's claims.   Accordingly, Plaintiff's Motion for Leave to Obtain Additional Discovery [Doc. 33] is **DENIED**, and Defendant's Motion for Summary Judgment [Doc. 19] is **GRANTED**.

BACKGROUND

Defendant Herkel is a franchisee for Aaron's Rents ("Aaron's") and operates six stores throughout Georgia, including stores in Macon (the "Macon Store") and Warner Robins (the "Warner Robins Store").   These stores sell and lease residential and office furniture, consumer electronics, and home appliances.   Plaintiff Faircloth was an employee of Defendant from January 2002, until his termination in October 2008.   The relevant facts giving rise to the instant action occurred over the six-year span of Plaintiff's employment.   These facts viewed in the light most favorable to Plaintiff are as follows.

Plaintiff's Employment with Defendant

In January 2002, Defendant hired Plaintiff as the Macon Store Customer Account Manager.   As Customer Account Manager, Plaintiff was responsible for collecting the past-due rent of customers and helping the General Manager ("GM"),

Sharon Thompson, operate the Macon Store.   As GM, Thompson was Plaintiff's immediate supervisor.

A year and a half later in the summer of 2003, Defendant promoted Plaintiff to the position of GM for the Warner Robins Store where he was responsible for its overall business operation.   Later in February 2005, Plaintiff received another promotion to part-time District Manager ("DM")[1] and was responsible for supervising five stores in Georgia.  In addition, he continued to serve as GM of the Warner Robins Store ("GM/DM").   The only store that Plaintiff did not supervise as DM was the Macon Store, where Thompson remained GM.   Most relevantly during that time period, Chris LaPerchia was his immediate supervisor.   Plaintiff, the only individual to serve in this dual managerial position for Defendant, served as GM/DM until his termination in October 2008.

Plaintiff's First Relationship with Sharon Thompson: Summer 2002-Summer 2003

Plaintiff and Thompson had worked together before Plaintiff started as Customer Account Manager at the Macon Store.  Indeed, in their prior job, Thompson had also been Plaintiff's immediate supervisor.   Their professional and personal

---

[1] At times, the parties use "District Manager" and "Regional Manager" interchangeably.   To avoid confusion, the Court will refer to this position as "District Manager" or "DM."

relationship, during this previous job and for the first six months of Plaintiff's employment with Defendant, consisted of only flirtatious interactions.   However, beginning in the summer of 2002, Defendant and Thompson began a consensual sexual relationship that lasted for approximately one year until the summer of 2003. After this relationship ended, Plaintiff took the promotion as GM for the Warner Robins Store partly to "get away" from Thompson.  [Pl. Dep. 97:23-24].

Plaintiff's "On-Again/Off-Again" Relationship with Thompson: 2004-2007

At some point in 2004 during a company managers' meeting, Plaintiff and Thompson entered back into a sexual relationship, beginning their "sporadic" "on-again/off-again" relationship that lasted until approximately 2007.   [Id. at 83:23]. Plaintiff, characterizing this sexual relationship as "friends with benefits," enjoyed the relationship so long as Thompson was not "clingy."   [Id. at 84:8, 92:25].   Plaintiff, however, also testified that this second relationship was "nonconsensual."   [Id. at 94:10-14].  Plaintiff explains that he was only sexually involved with Thompson "so that she didn't cause [him] as many problems at work."   [Id.].  Notably, Plaintiff's sexual harassment claim is not based on the sexual acts with Thompson or the sexual

relationship itself.[2]   Instead, Plaintiff solely asserts that the problems Thompson caused at work constituted "sexual harassment."

Problems at Work: 2003- 2008

It is undisputed that Plaintiff and Thompson did not have any issues or problems with one another until August or September 2003, after they ended their first relationship ended and after Plaintiff first promotion.  It is entirely unclear exactly when, during this five-year span, Thompson allegedly caused Plaintiff problems.  This is, in large part, because Plaintiff only experienced problems when he and Thompson were "off-again."   Plaintiff, however, does not identify when their relationship was "off-again," or more specifically, when, during the "off-again" period, each alleged problem occurred.

Notwithstanding, Plaintiff identifies several instances of Thompson's behavior, general and specific, that form the basis of his sexual harassment claim: Thompson "constantly … scrutinized" Plaintiff, [Id. at 95:7-8]; Thompson called LaPerchia and "instigated problems" by "complain[ing] about Plaintiff when they were not sexually involved," [Id. at 88:11]; Thompson called Plaintiff frequently, even when he was with a customer; Thompson accused Plaintiff of sleeping with other employees; Thompson

_____

[2] Nor does Plaintiff allege a sexual harassment claim under a *quid pro quo* theory.

hired employees for her store that Plaintiff had previously fired from his store "to get back at [him]," [Id. at 156: 8]; and Thompson told another store manager that Plaintiff had cheated to win Store of the Month.[3]

Plaintiff's sex discrimination claim also includes several instances when Thompson was allegedly treated more favorably.  Plaintiff claims: Thompson was allowed to take merchandise from other stores; Thompson did not have to work the same hours as Plaintiff and other managers; Thompson was given twice the amount of money per month to spend on merchandise in her store as compared to the amount of money given to other stores; Thompson could order merchandise, but Plaintiff could not; when Plaintiff was GM/DM, Thompson did not have to report to Plaintiff; Thompson did business with one of her employees in violation of company policy; and LaPerchia paid Thompson's store when her store won the corporate incentive program, "Lucky 7," was discontinued, [Doc. 24, p. 14].

Lastly, Plaintiff's retaliation claim includes Plaintiff's disputed opposition to Thompson's conduct: physical abuse of several employees, regardless of race or sex; use of the "N word" while working, [Doc. 22, p. 15]; and not giving African-American

---

[3] The Court notes that Plaintiff alleged several facts in his Response that were not accurately cited for support in the record.  The Court will consider only those facts that are adequately supported by the record.  See Fed. R. Civ. P. 56(e).

6

employees the same number of days off as, presumably, non-African-American employees.

<u>Sexual Harassment Complaint: Early 2008</u>

At the beginning of 2008,[4] sometime after Plaintiff and Thompson's second sexual relationship ended, LaPerchia called Plaintiff to schedule a meeting to resolve some of their work-related issues.  Fearing that Thompson had already told LaPerchia biased details about their problems, Plaintiff immediately told LaPerchia over the phone that he wanted to file a formal sexual harassment complaint against Thompson so that he could give "[his] side."  [Pl. Dep. 143:21].  This was the first and only time Plaintiff indicated that Thompson was sexually harassing him.  A formal complaint, other than this statement, was neither filed nor pursued by either LaPerchia or Plaintiff.  The meeting between LaPerchia, Thompson, and Plaintiff never occurred.

Reading the facts in the light most favorable to Plaintiff, Defendant Herkel's sexual harassment policies require Defendant's employees to report the incident of sexual harassment to LaPerchia or an owner.  Thus, assuming that simply expressing the desire to file a complaint is sufficient under Defendant's policies, Plaintiff

---

[4] The parties are unsure exactly when LaPerchia called Plaintiff—either at the end of 2007 or at the beginning of 2008.  This date is only relevant to Plaintiff's retaliation claim, and thus, reading the facts in the light most favorable to Plaintiff, the Court will presume that LaPerchia contacted Plaintiff at the beginning of 2008.

sufficiently lodged a sexual harassment complaint against Thompson in the beginning of 2008.

Plaintiff's Termination: October 20, 2008

On October 20, 2008, Defendant terminated Plaintiff.   LaPerchia informed Plaintiff that his dual position of GM/DM was being eliminated and "may"[5] have informed him that his declining job performance had resulted in a $30,000 loss per month for Defendant.   Plaintiff immediately responded, "F**k you," [LaPerchia Dep. 54:8], and admittedly cussed out LaPerchia for "a good hour."   [Pl. Dep. 115:12].   At this point, LaPerchia's decision to terminate Plaintiff was final; there was "no going back."   [LaPerchia Dep. 54:9-10].   At some point towards the end of this exchange, Plaintiff asked LaPerchia if he could keep his position as GM for the Warner Robins Store, but LaPerchia told him that this position was also being eliminated.   Plaintiff was the only GM/DM employee, and thus the only GM/DM employee whose position was eliminated.   However, Plaintiff was not the only GM employee, but was the only employee whose GM position was eliminated.

That next day, LaPerchia completed Plaintiff's Separation Notice ("Notice of Separation" or "Notice) for the Georgia Department of Labor.   LaPerchia wrote:

---

[5] Plaintiff "can't recall" if LaPerchia informed him about the decrease in customers, but he "may have."  [Pl. Dep. 132:16].

"[Plaintiff's] position of general manager and district manager has been eliminated. His duties will be split between myself and another GM, [Thompson]. The company has been doing poorly, and we are forced to downsize. Simply put, an economic layoff." [Doc. 22-7].

After Plaintiff's Termination[6]

Later in October, Defendant hired Deago Smith to be GM of the Warner Robins Store. Also that same month, Defendant tried to hire Kevin Walker as DM, but presumably was unsuccessful. It is undisputed that some of Plaintiff's duties as GM/DM were given to Thompson.

Worker's Compensation Agreement: November 10, 2010

On November 10, 2010, nearly two years after Plaintiff's termination, Plaintiff signed a "Voluntary Resignation" Agreement (the "Agreement") with Defendant in regards to a separate workers' compensation claim. The Agreement provides as follows:

It is the Employee/Claimant's position that he continues to be disabled and is unable to perform the essential functions of his former position

---

[6] Because much of Defendant's decisions following Plaintiff's termination are disputed, the Court will read the facts in the light most favorable to Plaintiff. Plaintiff's Notice of Objection [Doc. 31] to Defendant's evidence that employee Deago Smith did not get paid the salary of a GM until the spring of 2009 is therefore moot. Additionally, as explained in more detail below, the Court will accept Kevin Walker's affidavit as sufficient testimony.

with the Employer.  In further consideration of the settlement amount specified in the Stipulation and Settlement Agreement, the Employee/Claimant agrees that he hereby resigns from said employment with his Employer, effective immediately, and agrees to refrain from reapplying for subsequent employment with said Employer at any time in the future.   The Employee/Claimant agrees that no reasonable accommodations can be made to allow him to perform the essential functions of his former position or any other position for which he is otherwise qualified.

[Doc. 22, p. 12].  This is the only document cited to in the record that relates to Plaintiff's "resignation," and is relevant only because Defendant asserts that Plaintiff voluntarily resigned.

Procedural History

On December 14, 2008, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment, age and sex discrimination, and retaliation against Defendant.  In his Charge, Plaintiff indicates that the earliest and latest date of discrimination was the same date, October 20, 2008, the date of Plaintiff's termination.  Plaintiff did not check the "continuing violation" box.  In response to Plaintiff's Charge, Defendant stated that Plaintiff was terminated because of performance issues and unprofessional conduct.

10

On July 1, 2010, the EEOC issued a Notice of Right to Sue letter.  Plaintiff filed the instant action against Defendant on September 29, 2010, asserting claims of hostile work environment, sex discrimination, and retaliation in violation of Title VII.

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986 ).  A genuine issue of material fact only exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986).  Thus, summary judgment must be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.  See id. at 249-52, 106 S. Ct. at 2511-12.  When ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion.  Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).

The moving party "always bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.  Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553 (internal quotation marks omitted).  If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact.  See Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 324-26.  This evidence must consist of more than mere conclusory allegations or legal conclusions.  See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

## I.   Plaintiff's Motion for Leave to Obtain Additional Discovery and Defendant's Notice of Objection

In his Response to Defendant's Motion for Summary Judgment, Plaintiff relies on Kevin Walker's unsigned affidavit in which Walker states that soon after Plaintiff was terminated, Defendant tried to hire him to replace Plaintiff.  Plaintiff uses this statement to support his contention that Defendant's reason for terminating Plaintiff, that Plaintiff's positions was eliminated, is pretext.  Defendant filed a Notice of Objection to this unsigned affidavit [Doc. 28], and twenty days later, Plaintiff filed his

Motion for Leave to Obtain Additional Discovery [Doc. 33].  Therein, Plaintiff requests additional time to obtain Walker's testimony, and explains that Walker refused to testify without a subpoena.  In support, Plaintiff argues that Walker's testimony is a material issue.  The Court disagrees.

Rule 56(d) of the Federal Rules of Civil Procedure allows a nonmovant to request additional time to obtain an affidavit if the nonmovant "cannot present facts essential to justify [his] opposition."  Fed. R. Civ. P. 56(d).  Here,    however,    even accepting Walker's deficient affidavit as part of the record for the purposes of this Motion, the Court concludes, as explained below, that Plaintiff still cannot demonstrate a genuine issue of material fact with respect to whether Defendant's legitimate, non-discriminatory reason was pretext for discrimination.    Because Walker's Testimony is not essential to Plaintiff's case, his Motion for Leave to Obtain Additional Discovery [Doc. 33] is **DENIED**.

## II.  Defendant's Motion for Summary Judgment

The Court now considers whether Defendant is entitled to summary judgment. In its Motion, Defendant argues that a genuine issue of material fact does not exist

with respect to Plaintiff's Title VII claims of (1) sexual harassment; (2) sex discrimination; (3) retaliation; and (4) general discrimination and retaliation.[7]

A. <u>Administrative Exhaustion</u>

Before considering the merits of each claim, the Court will first address Defendant's argument that Plaintiff failed to exhaust his administrative remedies with respect to his first three claims.

1. *Sexual Harassment*

First, Defendant argues that Plaintiff's sexual harassment claim is time-barred by Title VII's limitation period.  It is well-settled that before suing under Title VII a plaintiff must first exhaust certain administrative procedures.  <u>Wilkerson v. Grinnell Corp.</u>, 270 F.3d 1314, 1317 (11th Cir. 2001) (citation omitted).  In Georgia, exhaustion requires that a plaintiff file a charge of discrimination with the EEOC within 180 days "after the alleged unlawful employment practice occurred."  42 U.S.C.A. § 2000e-5(e)(1); <u>Watson v. Blue Circle, Inc.</u>, 324 F.3d 1252, 1258 (11th Cir. 2003).  If a plaintiff fails to file before this time elapses, his claim is untimely.  <u>Alexander v. Fulton Cnty.</u>, 207 F.3d 1303, 1332 (11th Cir. 2000).

---

[7] Plaintiff appears to assert the general discrimination and retaliation claims in his deposition and refers to the facts alleged in Paragraph 18 of his Complaint.

A plaintiff may, however, avoid this stringent filing requirement if the plaintiff proves that the continuing violation doctrine applies.  Roberts v. Gadson Mem. Hosp., 835 F.2d 793, 800 (11th Cir. 1988).  The continuing violation doctrine allows a plaintiff to "pursue a claim on an alleged act of discrimination that happened before the 180 day limitation when the act is part of a continuing violation of Title VII that continues into the 180 day period of time.  Harris v. Fulton-Dekalb Hosp. Auth., 255 F. Supp. 2d 1347, 1366 (N.D. Ga. 2002).

Once the defendant raises the issue of timeliness, the plaintiff bears the burden of proving that the conduct alleged in his EEOC Charge satisfies the 180-day rule or establishing that the untimeliness is excused by an equitable exception, such as the continuing violation doctrine.  Malone v. K-Mart Corp., 51 F. Supp. 2d 1287, 1300 (M.D. Ala. 1999); see Roberts, 835 F.2d at 800 (noting Plaintiff has burden of proving continuous violation doctrine).

Here, it is undisputed that Plaintiff's Charge was filed on December 10, 2008. Thus, unless the continuing violation doctrine applies, only the alleged acts of discriminatory conduct that occurred on or after June 10, 2008, can be used as a basis for Plaintiff's sexual harassment claim.

Defendant argues that Plaintiff fails to offer any evidence that the alleged harassment occurred on or after June 10, 2008.  Indeed, a review of the record indicates that Plaintiff does not identify any of the dates that the specific incidents of harassment occurred on.  More importantly, however, Plaintiff does not respond to Defendant's timeliness argument.  This omission is unfortunate, especially considering Plaintiff has the burden of either proving that the conduct alleged in his Charge satisfied the 180-day rule or establishing that the untimeliness is excused by an equitable exception.  Thus, because Plaintiff has failed to carry this burden, the Court concludes Plaintiff has conceded any argument to the contrary and has consequently failed to prove that his claim is not time barred or is entitled to an exception.  Accordingly, Defendant's Motion with respect to Plaintiff's sexual harassment claim is **GRANTED**.

2. *Sex Discrimination*

Defendant next contends that Plaintiff's sex discrimination claim was not asserted in his EEOC Charge.  The scope of a plaintiff's complaint is limited to those claims included in the charge and those claims which can reasonably be expected to "grow out of the charge of discrimination."  Armstrong v. Lockheed Martin Beryllium Corp., 990 F. Supp. 1395, 1400 (M.D. Fla. 1997) (citing Turner v. Orr, 804 F.2d 1223

16

(11th Cir. 1986)).   Here, Plaintiff's Charge states, in part: "I believe I have been discriminated against … because of my sex (male)."   [Doc. 20-12].   Accordingly, the Court finds that Plaintiff sufficiently asserted a sex discrimination claim in his EEOC Charge.

      3.   *Retaliation*

      Finally, Defendant argues for the first time in its Reply Brief that Plaintiff's retaliation claim is procedurally barred because 1) Plaintiff did not plead this basis in his EEOC Charge; 2) Plaintiff has not offered evidence that he filed his EEOC charge within 180 days of making such a complaint; and 3) Plaintiff has not alleged such a claim in his Complaint.   However, because Defendant raised these issues for the first time in its Reply, the Court will not consider Defendant's arguments.   See, e.g., Herring v. Sec., Dept. of Corrs., 397 F.3d 1338, 1342 (11th  Cir. 2005).

  B.   Merits of Plaintiff's Sex Discrimination Claim

      The relevant portion of Title VII provides that an employer may not "discharge any individual … with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … sex."   42 U.S.C. § 2000e–2(a)(1).

      Claims of sex discrimination based on circumstantial evidence, as is the case here, are evaluated under the burden shifting framework developed in McDonnell

Douglas v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973).  First, a plaintiff must establish a prima facie case, or "facts adequate to permit an inference of discrimination." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).  The elements of a plaintiff's prima facie case depend on the type of discrimination alleged.  Id.  If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for its action.  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256, 101 S. Ct. 1089 (1981).  The burden then shifts back to the plaintiff who must show that the employer's proffered reasons for its actions were not the real reasons that motivated its conduct, but that the employer's proffered reasons were merely pretext for discrimination.  Id. at 253.

 1. *Prima Facie Case*

 Here, Plaintiff alleges that Defendant wrongfully terminated him because of his sex.  Both parties agree that Plaintiff must show the following in order to establish his prima facie case under Title VII: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he was subjected to an adverse employment action; and (4) his employer treated similarly situated employees outside of his protected class more favorably than he was treated, or he was replaced by an individual outside of his protected class.  Maynard v. Bd. of Regents of Div. of Univs. of the Fla. Dep't of Educ.,

342 F.3d 1281, 1289 (11th Cir. 2003) (citation omitted).   In its Motion, Defendant appears to concede the first two elements of Plaintiff's prima facie case, but contests the third and fourth elements.   Specifically, Defendant argues that Plaintiff has waived his right to assert that he was terminated and that Plaintiff cannot produce any evidence that a similarly situated female GM/DM was treated more favorably.

a)   Whether Plaintiff Suffered an Adverse Employment Action

Defendant asserts that Plaintiff is prohibited from arguing that he was subjected to an adverse employment action because he voluntarily resigned pursuant to the Agreement he signed in 2010, two years after his termination.   In addition to noting the temporal disconnect between Plaintiff's resignation and his termination, Plaintiff responds that he "specifically reserved his EEOC claim" in his Agreement. [Doc. 22, p. 12].  Both parties appear to be misguided.

To begin, Plaintiff's argument that the Agreement specifically reserves his EEOC claim is utterly baseless.   The Agreement for voluntary resignation references no such reservation, either expressly or implicitly.   Plaintiff's conclusory allegation in his affidavit to support this contention is insufficient.  See Bennett v. Parker, 893 F.2d 1530, 1533-24 (11th Cir. 1990) (A "conclusory allegation" cannot defeat a motion for summary judgment.").   Also, contrary to Defendant's argument, the Agreement also

19

does not state that Plaintiff waived his right to sue for discrimination. Additionally, Defendant does not offer any legal or factual authority to support its position that Plaintiff's termination was not an adverse employment action. Thus, the Court finds that Plaintiff's termination qualifies as an adverse employment action for purposes of his sex discrimination claim.

      b)  Plaintiff's Proffered Comparator

Thus, because Plaintiff has established the first three elements of his prima facie case, the Court must consider the final element, whether Plaintiff can identify a proper comparator. Plaintiff argues that Sharon Thompson, GM of the Macon Store, is a proper comparator. Defendant, however, argues that a proper comparator is an individual who, like Plaintiff, held a dual managerial position. In doing so, however, Defendant concedes that Plaintiff was the only employee who held the position of GM/DM.

In order to offer a valid comparator, the comparator's misconduct must be "nearly identical to the plaintiff's in order to prevent courts from second guessing employers' reasonable decisions and confusing apples with oranges." Silverea v. Orange Cnty. Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001) (quotation omitted). This "nearly identical" standard requires the comparator's conduct to be of the same or

similar "quantity and quality" to the plaintiff's conduct.  Id.  In instances where "an employer reduces its workforce for economic reasons, an inference of [sex] discrimination requires the plaintiff and comparator to have held similar positions because only then can the court infer an improper motive for choosing to eliminate plaintiff's position."  Rudolph v. Bd. of Trs. of the Univ. of Ala., No. 2:11-cv-27-AKK, 2012 WL 1340077, at *7 (N.D. Ala. Apr. 16, 2011).

Here, the Court cannot reasonably assume that Thompson's position as GM was similar to Plaintiff's position as GM/DM because the jobs were undoubtedly different.  Although, the Court acknowledges that Plaintiff was the only employee who held the position of GM/DM and thus would be unable to offer any individual with the same job duties.

These issues aside however, the Court is satisfied that Thompson is a proper comparator.  The record indicates that Defendant also eliminated Plaintiff's GM position.  Certainly, Defendant's decision to eliminate Plaintiff's position as GM and not Thompson's position as GM indicates that Thompson was treated more favorably. Accordingly, the Court concludes that Plaintiff has identified Thompson as a proper comparator, and thus Plaintiff has established his prima facie case for sex discrimination.

2. *Legitimate Non-Discriminatory Reason*

Because Plaintiff has made out a prima facie case of sex discrimination, the burden now shifts to Defendant to articulate a nondiscriminatory reason for its employment action.  Here, Defendant's legitimate, nondiscriminatory reason offered on summary judgment is that Plaintiff's positions as GM/DM and GM for the Warner Robins Store were eliminated due to economic reasons.

The Court finds that Defendant's reasons are adequate to satisfy the employer's burden of production.  See Vessels v. Atlanta Ind. School Syst., 408 F.3d 763, 769–70 (11th Cir. 2005) (employer's burden is exceedingly light and is satisfied as long as the employer articulates a clear and reasonable non-discriminatory basis for its actions).  Thus, because Defendant has met its burden of providing a legitimate, nondiscriminatory reason for its actions, Plaintiff must now show that Defendant's reasons are merely pretext, and the real reason for Defendant's decision to terminate Plaintiff was sex discrimination.

3. *Pretext*

A plaintiff establishes that an employer's articulated reason is "pretext for discrimination only when it is shown that the reason was false <u>and</u> that discrimination was the real reason." Dawson v. Henry Cnty. Police Dept., 238 F. App'x 545, 549 (11th

22

Cir. 2007) (emphasis in original) (citing Brooks v. Cnty. Com'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1163 (11th Cir. 2006)).  "It is not enough, in other words, to *dis* believe the employer; the fact finder must *believe* the plaintiff's explanation of intentional discrimination."  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519, 113 S. Ct. 2742, 2745 (1993) (emphasis in original).  Here, Plaintiff offers several arguments at the pretext stage.  However, at best, Plaintiff establishes only that Defendant's proffered reason is false.  Plaintiff fails to show, and nothing in the record indicates, that there is any genuine issue of material fact that Defendant's articulated reason was pretext for discrimination.[8]

Plaintiff's most convincing argument—although ultimately unsuccessful—is that Defendant did not actually eliminate his position.  Specifically, Plaintiff argues that Defendant attempted to fill Plaintiff's GM position with Kevin Walker and replace Plaintiff's position as DM with Deago Smith.  This evidence certainly creates a genuine issue of material fact as to whether Defendant's articulated reason that Plaintiff's positions were eliminated is false.

---

[8] The Court notes that in several instances Plaintiff appears to disregard the difference between GM/DM and DM, and instead blurs these positions together as one.  Nevertheless, where necessary, the Court will use Plaintiff's understanding of his positions to analyze the merits of his claim.

23

Most importantly, however, nothing in the record reveals any indication that Defendant was motivated by a discriminatory animus against males.  A "'rejection of the defendant's proffered reason[ ] will permit the trier of fact to infer the ultimate fact of intentional discrimination,' but does not *compel* judgment for the plaintiff, because the plaintiff still bears the 'ultimate burden of persuasion.'"  Lawson v. KFH Inds., 767 F. Supp. 2d 1233, 1243 (M.D. Ala. 2011) (quoting St. Mary's Honor, 509 U.S. at 511, 113 S. Ct. 2742, 2745).  Here, Plaintiff fails to carry his ultimate burden of proving that Defendant acted with the intent to discriminate against him.  Indeed, two arguments offered in his Response Brief actually serve to undermine his position rather than support it.

First, Plaintiff's argument that he was replaced by two males weakens his claim that he was discriminated against because of his sex.  A subsequent hiring of an individual within a plaintiff's protected group can be used to prove pretext when the record indicates that this hiring was a "pretextual device specifically designed by [an employer] to disguise its acts of discrimination."  Nix v. WLCY Radio/Rahall Comms., 738 F.2d 1181, 1185 n.1 (11th Cir. 1984).  However, when the record is devoid of any evidence that the subsequent hiring was a discriminatory "disguise," as is the case here, the subsequent hiring supports the conclusion that Defendant's reason was not

24

pretext for discrimination.   Id.   Here, Plaintiff points to no evidence that would suggest Defendant's subsequent communications with Kevin Walker and latter hiring of Deago Smith was done with the intent to disguise an act of earlier discrimination against Plaintiff.  Thus, despite Plaintiff's attempt to prove pretext with this argument, the Court finds that Defendant's latter conduct supports the conclusion that it did not intentionally discriminate against Plaintiff.

Similarly, Plaintiff's argument that Thompson took some of his duties as GM/DM after he was terminated buttresses Defendant's articulated reason that his position was eliminated, not that Defendant intentionally discriminated against Plaintiff.  The fact that a Plaintiff's "duties were assumed" by an individual outside of his protected class is "insufficient ... to raise an issue of pretext" without any additional evidence.  Toth v. McDonnell Douglas Aerospace Servs. Co., 31 F. Supp. 2d 1347, 1354, n.15 (M.D. Fla. 1998) (quotation omitted).  Accordingly, that Thompson, a female employee, assumed duties that Plaintiff performed prior to his termination does not give rise, by itself, to any inference of intentional discrimination.

Looking lastly to Plaintiff's two remaining arguments, Plaintiff first contends that Defendant's reasons for his termination are inconsistent because of Defendant's EEOC response in which it stated that it terminated Plaintiff because of performance

issues and unprofessional conduct, not because of an economic layoff.  A plaintiff may establish pretext by demonstrating that the employer has offered inconsistent reasons for the challenged employment action.  Tidwell v. Carter Prods., 135 F.3d 1422, 1428 (11th Cir. 1998).  However, the existence of an additional, nondiscriminatory reason is not automatically "inconsistent" and does not always prove pretext.  Id.  "[A]n employer is permitted to elaborate on its reasons for making an employment decision."  Hayes v. City of Newnan, Ga., No. 3:05-CV-102-JOF, 2007 WL 2765555, at *30 (N.D. Ga. Sept. 20, 2007) (holding that employer's subsequent litigation reason that plaintiff engaged in misconduct was merely an elaboration of, and thus consistent with, employer's earlier reason that "change was needed" in plaintiff's position).

Here, in Defendant's Notice of Separation and now on summary judgment, Defendant asserts that Plaintiff's GM/DM and GM positions were eliminated for economic reasons.  This reason is certainly different that the reason in Defendant's EEOC response that Plaintiff acted unprofessionally and had performance issues.  However, Defendant's reasons are nevertheless consistent because Defendant's EEOC reason is a reasonable elaboration of the insight behind its decision to eliminate Plaintiff's position.   Thus, Plaintiff's argument that Defendant's reasons are inconsistent fails to establish pretext.

26

Lastly, Plaintiff cryptically argues that he never engaged in any misconduct. Although the purpose of this argument is unclear, the Court will first assume that Plaintiff is challenging the veracity of Defendant's reason asserted in its EEOC response that Plaintiff was unprofessional and had performance issues. This argument, however, is irrelevant. See Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991). The pretext inquiry is limited to whether an employer believed that an employee engaged in the misconduct, not whether the employee actually did. Id. Here, Plaintiff offers no evidence to suggest that Defendant did not believe there were issues with Plaintiff's performance or that Plaintiff was unprofessional. Accordingly, Plaintiff's attempt to challenge Defendant's earlier proffered reason is futile.

To the extent that Plaintiff attempts to generally argue that he was a good employee and did not deserve to be fired, Plaintiff cannot establish pretext "by quarreling with the wisdom of [the proffered] reason." Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000). Thus, "[s]imply claiming that [he] did nothing wrong and was, in fact, a good employee is insufficient." Summers v. City of Dothan, Ala., 757 F. Supp. 2d 1184, 1210 (M.D. Ala. 2010). Accordingly, Plaintiff's argument on this basis fails as well.

27

Based on the foregoing, Plaintiff has failed to show that Defendant's legitimate, nondiscriminatory reason was pretext for discrimination.  Thus, Defendant's Motion for Summary Judgment [Doc. 19] with respect to Plaintiff's sex discrimination claim is **GRANTED**.

C.  Merits of Plaintiff's Retaliation Claim

Plaintiff next alleges that he was terminated in retaliation for 1) filing a complaint with the EEOC, and 2) objecting to Thompson's alleged inappropriate behavior toward her employees.[9]  The Court will consider each allegation in turn.

1.  *EEOC Complaint*

Plaintiff asserts that Defendant retaliated against him after he "complained to the EEOC about the discriminatory treatment he received as a result of the actions of Defendant."  [Doc. 22, p. 17].  In support, Plaintiff cites his EEOC Charge filed on December 4, 2008.  Defendant counters that his Charge is not causally connected to

---

[9] Notably, Plaintiff does not argue that he was retaliated against for complaining about Thompson's sexual harassment, despite the fact that he styled point heading "C." in such a manner. [Doc. 22, p. 16].  Accordingly, this argument is waived.  Notwithstanding, the Court notes that any attempt to argue this point would likely fail due to the lack of temporal proximity between Plaintiff's informal complaint of sexual harassment at the beginning of 2008, and his termination in October 2008—almost nine months later.  See Higdon v. Jackson, 393 F.3d 1211, 1220-21 (11th Cir. 2004) (explaining that a three-month interval between protected activity and adverse action, standing alone, is too long to establish an inference of retaliation).

Plaintiff's termination because Plaintiff filed his EEOC Charge after he was terminated.  The Court agrees.

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that he "engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." Goldman v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1277 (11th Cir. 2008).  The causal connection prong is satisfied by evidence that the protected action and the adverse employment action are not totally unrelated.  Id.

Here, Plaintiff was terminated on October 20, 2008.  Nearly two months later, Plaintiff filed his first and only complaint with the EEOC.  Accordingly, based on the timing of the aforementioned events, the Court concludes that Defendant could not have retaliated against Plaintiff based on his EEOC complaint.  Thus, Plaintiff's retaliation claim on this basis fails as matter of law.

    2. *Thompson's Behavior*

Plaintiff also asserts that he was retaliated against for objecting to Thompson's behavior, specifically her: 1) use of the "N word" when referring to African-American employees; 2) physical abuse of employees; and 3) discrimination against African-

29

American employees by not giving them the same number of days off.  [Doc. 22, p. 18].

This basis, however, also fails as a matter of law.

First, Plaintiff contends that he "objected" to Thompson's use of the "N word."

[Doc. 22, p. 18].  To establish the causation element of a retaliation claim, Plaintiff must

prove that "the employer was actually aware of the protected expression at the time it

took adverse employment action."  Brown v. Sybase, Inc., 287 F. Supp. 2d 1330, 1347

(S.D. Fla. 2003).  A court will not presume that a decisionmaker was motivated to

retaliate because of something unknown to him or her.  Brungart v. BellSouth

Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000).  A retaliation claim fails as a

matter of law if there is a substantial delay between the protected expression and the

adverse action, without other evidence tending to show causation.  Higdon, 393 F.3d

at 1220.

Here, Plaintiff testified that he is "almost positive" he discussed Thompson's

use of the "N word" with LaPerchia but that he "can't recall a hundred percent."  [Pl.

Dep. 238:4-6].  Assuming that Plaintiff did raise this objection with LaPerchia, Plaintiff

nevertheless cannot identify *when* he told LaPerchia.  Additionally, Plaintiff did not

identify any evidence that indicates a causal relationship between his objection and his

termination.  Thus, the Court cannot infer retaliation based on his termination and his

30

assumed report to LaPerchia.  Accordingly, Plaintiff's retaliation claim on this basis fails.

Next, Plaintiff asserts that he objected to Thompson's behavior of pushing employees.  Defendant argues that Plaintiff's claim on this basis is improper because Plaintiff testified that Thompson pushed both African-American and Caucasian employees.  A Title VII retaliation claim necessarily requires that the plaintiff's opposition be taken to "oppose[ ] any practice made an unlawful employment practice by [Title VII]."  42 U.S.C. § 2000e-3(a); see Dubose v. SYSCO Corp., No. 1:10-cv-02952-WSD, 2011 WL 1004675, at *3 (N.D. Ga. Mar. 18, 2011) (holding that facts indicating general unfair treatment of employees were insufficient to establish retaliation under ADEA because the practices were not discriminatory).

Here, Plaintiff testified that Thompson did "not just [hit] blacks" but "black[s] and white[s]" as well as males and females.  [Pl. Dep. 182:6].  Although Thompson's behavior was abusive and inappropriate workplace conduct, it was not discriminatory.  Accordingly, Plaintiff simply opposed employee abuse, not employee discrimination.  Such opposition is insufficient to establish opposition of an unlawful employment practice under Title VII.  Accordingly, Plaintiff's retaliation claim on this basis also fails as a matter of law.

Finally, Plaintiff argues that he objected to Thompson's discrimination against African-American employees "in such matters as the days off they were given."  [Doc. 22, p. 18].  In support of this argument (and his two previous arguments), Plaintiff evasively cites to a five-page span in his deposition.  After reading the cited pages, the Court can identify only one area that could, albeit remotely, support Plaintiff's assertion: when asked about Thompson's acts of discrimination in the workplace, Plaintiff responded, "Then another African-American was let go for not coming to work quick enough after a sickness."  [Pl. Dep. 180:4-5].  Assuming that this testimony directly supports Plaintiff's argument, Plaintiff does not indicate that he informed Defendant of Thompson's behavior.  Thus, Plaintiff's retaliation claim on this basis fails because Plaintiff cannot establish that Defendant knew of Thompson's discriminatory behavior.  See Brown, 287 F. Supp. 2d at 1347 (Plaintiff must prove that the "employer was actually aware of the protected expression at the time it took adverse employment action.").

Accordingly, Plaintiff has failed to establish a prima facie case of retaliation under Title VII.  Thus, Defendant's Motion for Summary Judgment [Doc. 19] with respect to Plaintiff's retaliation claim is **GRANTED**.

D.  Merits of Plaintiff's General Equal Opportunity Claim

Finally, Defendant argues that Plaintiff's fourth claim asserted in Paragraph 18 of his Complaint was treated as a separate claim in Plaintiff's deposition and should be dismissed because it is not a separate and distinct claim in his Complaint.  In his Response, Plaintiff concedes that this claim should be dismissed.  Accordingly, to the extent that paragraph 18 of Plaintiff's Complaint could be construed as a separate claim, Defendant's Motion for Summary Judgment as to this claim [Doc. 19] is **GRANTED**.

## CONCLUSION

Based on the aforementioned, Defendant's Motion for Summary Judgment [Doc. 19] is **GRANTED** in its entirety.  Plaintiff's Motion for Leave to Obtain Additional Discovery [Doc. 33] is **DENIED**.

   **SO ORDERED,** this 11th day of June, 2012.

                                        S/  C. Ashley Royal
                                        C. ASHLEY ROYAL
                                        UNITED STATES DISTRICT JUDGE

LMH/ssh/aes

33